Stephen Finestone (Cal. Bar. No. 125675)
Jennifer C. Hayes (Cal. Bar No. 197252)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Telephone: (415) 616-0466
Facsimile: (415) 398-2820
Email: sfinestone@fhlawllp.com
jhayes@fhlawllp.com

[additional counsel listed on signature page]

*Attorneys for the ResCap Liquidating Trust*

Michael Malter, Esq. (SBN 96533)
Robert G. Harris, Esq. (SBN 124678)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, California 95050
T: (408) 295-1700
F: (408) 295-1531
Email: michael@bindermalter.com
Email: rob@bindermalter.com

[additional counsel listed on signature page]

*Attorneys for Lehman Brothers Holdings, Inc.*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>HOME LOAN CENTER, INC.,<br><br>Debtor. | Case No. 19-51455 (MEH)<br><br>Chapter 11<br><br>**CREDITORS' JOINT LIMITED OPPOSITION TO EMPLOYMENT APPLICATION FOR PSZJ, AND "JAY ALIX PROTOCOL" MOTION FOR ARCH + BEAM**<br><br>Date: September 24, 2019<br>Time: 10:00 a.m.<br>Place: Courtroom 11<br>280 South First Street<br>San Jose, CA 95113<br>Judge: Hon. M. Elaine Hammond |

Case: 19-51455    Doc# 89    Filed: 09/06/19    Entered: 09/06/19 17:20:42    Page 1 of 9
CREDITORS' JOINT LIMITED OPPOSITION RE PSZJ AND ARCH + BEAM

ResCap Liquidating Trust ("ResCap") and Lehman Brothers Holdings, Inc. ("LBHI," and with ResCap, the "Creditors") jointly file this limited opposition to the (1) Motion For Entry Of Order Pursuant To Bankruptcy Code Sections 363 And 105 Approving The Engagement Contract Between Arch & Beam Global, LLC ["Arch + Beam"], And The Debtor [Doc. No. 37]; and (2) Debtor's Application To Employ Pachulski Stang Ziehl & Jones LLP ["PSZJ"] As General Bankruptcy Counsel For The Debtor [Doc. No. 43] (collectively, the "Employment Requests") filed by debtor Home Loan Center, Inc. ("HLC").[1]

HLC's voluntary conversion of this case to chapter 7 [Doc. Nos. 77 & 83] moots a number of the objections that the Creditors would have had to the Employment Requests. Conversion, however, does not change the facts that (1) Arch + Beam and PSZJ together are holding more than $900,000 in retainers, (2) Williams & Connolly (whose application has been withdrawn) is holding more than $455,000 in retainer, and (3) other professionals who have never filed employment applications are holding an additional nearly $380,000 in retainers.[2] The more than $1.7 million in retainers belongs to the estate and should be returned to the chapter 7 trustee without delay.

In addition, conversion makes Arch + Beam's retention under the so-called "Jay Alix Protocol" even more problematic, given that (1) HLC lacks standing and authority to pursue approval of Arch + Beam's contract under Bankruptcy Code section 363, because only the trustee has authority to do so, (2) neither the firm nor Mr. English will be serving as a "Chief Restructuring Officer," (3) Arch + Beam's fees should be subject to the same requirements for allowance as other professionals under Bankruptcy Code section 330, with a full opportunity for creditors to object

---

[1] The Creditors understand that the Debtor's Application To Employ Williams & Connolly, LLP As Special Litigation Counsel, Effective As Of The Petition Date, Pursuant To Section 327(e) Of The Bankruptcy Code [Doc. No. 33] has been withdrawn, and on that basis are not filing an objection to it.

[2] These professionals and their retainers include the law firms of Katten Muchin Rosenman LLP ($131,701.67) and Cooley LLP ($7,325.00), FTI Consulting ($150,304.30), BPM Accounting & Consulting ($14,386.00), and independent director Kyle Everett/Development Specialists Inc. ($75,000.00 in "prepaid director fees").

following a properly filed fee application, and (4) there is no justification for the estate to be providing indemnifications and releases to Mr. English or Arch + Beam.[3]

**The Retainers**

PSZJ is holding a $525,000 retainer, while Arch + Beam is holding an approximately $382,000 retainer. These amounts obviously were based upon HLC remaining in chapter 11, which is not the case. While the firms may be entitled to reasonable retainers to cover their approximately one-month of services to the estate (to the extent their fees are allowed by this Court), they should return all remaining amounts to the estate without delay, as should all other professionals who are holding retainers (*i.e.*, the professional firms that have not filed employment applications).

Administrative expenses in the converted chapter 7 case have priority over pre-conversion administrative expenses. 11 U.S.C. § 726(b). Accordingly, the estate's remaining cash should be available to pay chapter 7 administrative expenses, rather than held in retainers for pre-conversion professionals.

Cash is a concern in this case, because HLC has no operating business or other regular source of income. Although HLC had approximately $5.4 million in cash as of the petition date, that is only about half of what it had ninety days before the petition date – the Schedules show that approximately $5 million was spent on professionals' fees and retainers in just three months. Doc. No. 80 at 58-68 (SOFA Rider 3). HLC also internally projected that the chapter 11 case would burn through another $2 million in cash by December, and it is unknown how much the chapter 11 professionals already spent opposing the conversion motion before HLC agreed to convert the case. Thus, it is imperative that cash retainers be returned to the estate, so that cash may be used to fund the administration of the chapter 7 case in accordance with the priorities set forth in the Bankruptcy Code. Allowing the chapter 11 professionals to keep retainers would conflict with the Bankruptcy Code's priority scheme and impair the trustee's work in administering the chapter 7 case.

---

[3] The Creditors reserve all rights as to (1) whether PSZJ's and Arch + Beam's fees should be allowed, and in what amount, and (2) whether the estate may have claims for disgorgement for prepetition fees they received under Bankruptcy Code section 329(b) or otherwise, or any other claims. The Creditors understand that the Employment Requests do not preclude their or a trustee's inquiry into these issues, and any appropriate action based upon the results of that inquiry.

**Arch + Beam**

The Creditors already have noted their serious concerns about Arch + Beam's connections with insiders in this case. Nevertheless, the Creditors would not oppose Arch + Beam's retention pursuant to Bankruptcy Code 327 for the approximately one-month it worked prior to conversion. The Creditors, however, do oppose Arch + Beam's request to be employed pursuant to Bankruptcy Code section 363 and the "Jay Alix Protocol," including Arch + Beam's proposed (i) indemnification and release by the estate and (ii) exemption from filing fee applications.

According to the Arch + Beam Employment Request, "the CRO and Arch + Beam are not being employed as professionals under section 327 of the Bankruptcy Code, they will not be submitting regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code." Arch + Beam Employment Request at 8. Rather, while it was still a debtor in possession, HLC filed a "motion" to employ Arch + Beam under Bankruptcy Code section 363. At best, Arch + Beam will only be partially complying with section 327, and its fees will be subject to review by only certain parties, without the requirement that Arch + Beam file a fee application giving all creditors notice and an opportunity to object.

Arch + Beam's "Jay Alix" Employment Request should be denied.

***First, neither Arch + Beam nor HLC have standing to obtain relief under Bankruptcy Code section 363.*** Section 363(b)(1) provides that "[t]he *trustee*, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate …." Neither Arch + Bean nor HLC is a "trustee," and HLC forfeited all powers of a debtor in possession when it converted the case to chapter 7. *See* 11 U.S.C. § 1107(a) (debtor in possession has powers of a trustee); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6-9 (2000) (holding that only a trustee may surcharge collateral under Bankruptcy Code section 506(c)); *In re Mejia*, 576 B.R. 464, 468 (Bankr. S.D.N.Y. 2017) (holding that only a trustee may sell property of the estate, citing numerous authorities).[4] HLC's motion based on Bankruptcy Code section 363

---

[4] HLC filed its motion under section 363 (and 105). HLC does not seek to "assume" Arch + Beam's prepetition contract, and thus treat prepetition claims (including for indemnity) as administrative (which the Creditors would have opposed). Regardless, as with section 363, only a

must be denied because out-of-possession HLC lacks authority and standing to prosecute the motion.

*Second, if Arch + Beam is to be employed in this case, it should only be under Bankruptcy Code section 327, and it should only be compensated under section 330*. Arch + Beam is a "professional" firm, and its employees are "professional persons." The first paragraph on Arch + Beam's own website reads:

> **Arch + Beam is a consulting and advisory firm** focused on helping companies navigate challenging business situations. **Our professionals have many years of experience** working with management teams, boards and stakeholders to identify the best path forward.[5]

Mr. English is a Certified Insolvency and Restructuring Advisor ("CIRA"), Six Sigma Black Belt, certified Project Management Professional ("PMP"), and Certified Turnaround Professional ("CTP"). The other members of Arch + Beam sought to be employed by HLC are also professionals: Mr. Bailey is a Certified Turnaround Professional, and Mr. Geary has an M.B.A. in Finance. Arch + Beam's "Jay Alix" motion refers numerous times to the firm's "professionals" and their professional qualifications.

Arch + Beam's proposed services were to have been professional in nature. "Mr. English and Arch + Beam will communicate and negotiate with the Debtor's stakeholders, and provide plan and liquidation analysis for the purpose of restructuring the estate …." Arch + Beam Employment Request at 3. The services also included assisting with "critical analysis and decision making," "consulting," and financial modeling. *Id.* at 5-6.

Arch + Beam and its professionals thus are "professional persons" under Bankruptcy Code section 327. The Bankruptcy Code's plain language requires that they be employed and

---

trustee or debtor in possession may assume a contract under section 365 (with limited exceptions not applicable here, *e.g.* 11 U.S.C. § 365(p)(2)). HLC is neither a trustee nor DIP following conversion. Nor may HLC invoke section 105 as authority to avoid the clear reference to "trustee" in sections 363 and 365. *See Law v. Siegel*, 571 U.S. 415, 420-23 (2014) (holding that section 105 cannot be used to "contravene specific statutory provisions").

[5] *See* https://arch-beam.com/ (emphasis added).

compensated under Bankruptcy Code sections 327 through 331, and that they comply with all rules and U.S. Trustee Guidelines.

That Mr. English had been designated "Chief Restructuring Officer" does not relieve Arch + Beam of these requirements. Mr. English cannot be the CRO, because the case has been converted to chapter 7. Indeed, there never was a "restructuring" in this case. Even before conversion, HLC admitted that this is a liquidating estate with no operating assets. Its only material assets are cash and claims against LendingTree and other insiders.

Moreover, even if Mr. English had been an "officer" of the debtor, his firm and its other professionals were not. They were still third-party professionals who were employed by HLC to perform professional services for a bankruptcy estate. Arch + Beam was proposing a professional team to work on this case; besides Mr. English as CRO, there would have been Senior Managing Directors, Managing Directors, Directors, Associates, and "Staff and Admin," all of whom would have charged the estate at hourly rates. Except for "Staff and Admin" (which appear to be non-billable overhead), these are hourly professional services. Arch + Beam Employment Request at 7. Thus, Arch + Beam must comply with the Bankruptcy Code's requirements for the retention and compensation of professionals.

The Creditors recognize that some courts have permitted "Jay Alix Protocol" retentions. *See Nine West Holdings, Inc.*, 588 B.R. 678, 692-95 (Bankr. S.D.N.Y. 2018) (advisor hired under section 363 "to oversee day-to-day operations" in a "large chapter 11 case"). Maybe in some large cases with significant assets and operations, such a retention may make sense, particularly if supported by the vast majority of the creditors. *Id.* at 682-83 (noting widespread support for the debtor's motion by both secured and unsecured creditors). But here, the case has been converted. There is no reorganization, no operations, and no material assets other than cash and claims against insiders. Moreover, the estate's principal creditors oppose Arch + Beam's retention on these terms. Whatever justification may exist for the "Jay Alix Protocol" in some cases simply does not apply here.

***Third***, ***Arch + Beam and Mr. English should not be indemnified by the estate with administrative expense priority; nor should their liability for negligence be released.***

-5-
CREDITORS' JOINT LIMITED OPPOSITION RE PSZJ AND ARCH + BEAM

HLC proposes that Arch + Beam be indemnified *even for its own negligence*. Arch + Beam Employment Request at 10. Mr. English will himself be indemnified to the full extent of the indemnity HLC provides to its officers and directors—a standard HLC does not disclose, but which may even be broader (e.g., gross negligence or recklessness). *Id.*

Moreover, Arch + Beam's retention agreement provides that Arch + Beam shall have *no liability to the estate for its own negligence*, except to the extent it has actually been paid "for the particular service provided giving rise to the claim." Arch + Beam Employment Request at Ex. C, § 9 (emphasis added). Thus, Arch + Beam will be receiving a release for its own professional negligence.

Although there is no *per se* rule against professionals being indemnified for their negligence, *In re Metricom, Inc.*, 275 B.R. 364 (Bankr. N.D. Cal. 2002), "decisions in the Ninth Circuit appear not to favor exculpation or indemnification provisions that limit liability for negligence or breaches of fiduciary duties," *In re WCI Cable, Inc.*, 282 B.R. 457, 479 (Bankr. D. Or. 2002) (disapproving exculpation for professional negligence); *see also In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir. 1983) (holding that a trustee "is subject to personal liability for not only intentional but also negligent violations of duties imposed upon him by law").[6] Moreover, HLC has the burden to prove why such release and indemnification is justified *in this case* – saying that it may be "customary" or "OK in some other cases" is not enough. *Metricom*, 275 B.R. at 371-73; *see also In re Mortgage & Realty Trust*, 123 B.R. 626 (Bankr. C.D. Cal. 1991) (disallowing indemnification).

HLC does not need the services of Arch + Beam, given that it is no longer a debtor in possession. The trustee will hire his or her own professionals. Thus, even if Arch + Beam were to

---

[6] Although some courts within the Ninth Circuit have confirmed plans that exculpate professional negligence, *see In re Fraser's Broiler Service, Inc.*, 593 B.R. 636, 641 (Bankr. W.D. Wash. 2018), there is a significant difference between a confirmed plan at the end of a successful chapter 11 case, and a professional's employment application at the beginning of what is now a chapter 7 liquidation. A plan is intended to provide finality for the estate, and can only be confirmed after significant attention has been given to the estate's administration and the professional services in connection therewith. By contrast, an employment application is typically filed at the beginning of the case, before the professional's services have been performed. *See id.* at 642 (denying exculpation for work that would be done prospectively post-confirmation).

refuse to provide services without an indemnification or exculpation, that is a moot issue. Nor is there any justification for permitting Arch + Beam to assert administrative claims for expenses that are incidental to the services it actually provided to the estate during the approximately one month that HLC was a debtor in possession, including claims for its own attorneys' fees. *See Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158, 2165-66 (2015) (holding that section 330 only permits a professional to receive "reasonable compensation for actual, necessary services rendered, which does not include the professional's own fees incurred in litigating fee objections).

Finally, even if Arch + Beam were entitled to be released and indemnified for claims arising during the one-month that it worked during this case, under no circumstances should it be released or indemnified as an administrative expense for claims relating to its prepetition services. Because HLC has not moved to "assume" Arch + Beam's agreement under Bankruptcy Code section 365, none of Arch + Beam's prepetition rights and obligations should be affected. However, to the extent the Employment Request seeks to indemnify and/or release Arch + Beam for prepetition services, it should be denied.

Arch + Beam advised HLC for nearly two years prior to the petition date, during most of which time HLC was controlled by LendingTree and its insiders. The trustee undoubtedly will be examining those services and the hundreds of thousands of dollars paid for them. While the trustee may find no cause of concern, it is simply premature for the estate to grant Arch + Beam a release from its own negligence, and to indemnify it for the same. Moreover, Arch + Beam's prepetition rights to indemnity (if any) are, at best, general unsecured claims, and they should not be elevated to administrative expense status.

## CONCLUSION

For the foregoing reasons, the Creditors do not oppose the retention of PSZJ and Arch + Beam under Bankruptcy Code section 327, but they request that any unused retainers be returned to the estate without delay, and that the Court deny Arch + Beam's requests to be released and indemnified, and to avoid the requirements of Bankruptcy Code sections 327 through 331.

Dated: September 6, 2019

-7-
Case: 19-51455    Doc# 89    Filed: 09/06/19    Entered: 09/06/19 17:20:42    Page 8 of 9
CREDITORS' JOINT LIMITED OPPOSITION RE PSZJ AND ARCH + BEAM

*/s/ K. John Shaffer*
Susheel Kirpalani (Admitted Pro Hac Vice)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: susheelkirpalani@quinnemanuel.com

K. John Shaffer (Cal. Bar No. 153729)
Matthew R. Scheck (Cal. Bar. No. 273152)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: johnshaffer@quinnemanuel.com
 matthewscheck@quinnemanuel.com

Stephen Finestone (Cal. Bar No. 125675)
Jennifer C. Hayes (Cal. Bar No. 197252)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Telephone: (415) 616-0466
Facsimile: (415) 398-2820
Email: sfinestone@fhlawllp.com
 jhayes@fhlawllp.com

*Attorneys for the ResCap Liquidating Trust*

Brad J. Axelrod, Esq. (NYSBN 2287795)
Mara R. Leiber, Esq. (NYSBN 5321310)
WOLLMUTH, MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Tel: 212-382-3300
Fax: 212-382-0050
Email: BAxelrod@wmd-law.com

*Robert G. Harris*
Michael Malter, Esq. (SBN 96533)
Robert G. Harris, Esq. (SBN 124678)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, California 95050
T: (408) 295-1700
F: (408) 295-1531
Email: michael@bindermalter.com
Email: rob@bindermalter.com

*Attorneys for Lehman Brothers Holdings, Inc.*