

The following constitutes the order of the Court.
Signed: December 30, 2020

_M. Elaine Hammond_

_____
**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 19-51455 MEH |
| | ) |
| Home Loan Center, Inc. | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| | ) |
| | ) <u>Video Conference</u> |
| | ) Date:  November 19, 2020 |
| | ) Time: 11:00 a.m. |
| | ) |
| | ) |

<u>ORDER DENYING ARCH+BEAM's APPLICATION FOR COMPENSATION</u>

Home Loan Center ("HLC") was a non-operating entity with scheduled assets of $11 million and scheduled liabilities of $111 million at the time of its filing.  HLC's largest asset was scheduled in an unknown amount—a litigation claim for recovery of $40 million in dividends paid to its parent corporation, Lending Tree, LLC ("Lending Tree") in January 2016.

On June 21, 2019, the United States District Court for District of Minnesota entered judgment for ResCap Liquidating Trust ("ResCap") against HLC in the amount of $68 million.  Lacking assets to post a supersedeas bond, HLC filed its Chapter 11 case on July 21, 2019.[1]  Shortly thereafter, it filed applications to employ three professional groups: counsel for the debtor-in-possession, special counsel for the DIP, and Arch + Beam Global, LLC

_____
[1] Professionals were paid in full prior and provided significant retainers to the filing of the petition.

1

("A+B") for advisory services with Matthew English as Chief Restructuring Officer. The law firm applications were brought pursuant to § 327, but A+B's was brought pursuant to the "Jay Alix Protocol" ("Protocol"), applying 11 U.S.C. §§ 105 and 363.[2]

On the same day as these applications were filed, ResCap moved to convert the case to Chapter 7. This led to discovery and a stipulation between the parties to continue the hearing on the motion to convert, employment applications, and other initial motions to August 29, 2019. During this period, HLC and its professionals sought to negotiate a settlement with Lending Tree that would fund a liquidating plan providing recovery to HLC's creditors. HLC succeeded in obtaining a significant offer from Lending Tree, but due to concerns about an insider relationship and the lack of a term sheet, ResCap and Lehman Brothers Holdings, Inc. ("Lehman"), the second largest unsecured creditor, did not support this proposed settlement. Without a path forward in Chapter 11, HLC's counsel announced at the August 29 hearing that HLC would voluntarily convert its case to Chapter 7.

That day, HLC's counsel filed a notice of conversion, and the matters set for hearing were continued to September 24, 2019. A motion to convert was filed promptly after HLC's counsel was advised that it was required. The conversion order was entered on September 19, 2019, at which point Doris Kaelin was appointed Chapter 7 Trustee ("Trustee").

Prior to the hearing on employment applications, the United States Trustee ("UST") and creditors ResCap and Lehman filed oppositions to the A+B application. The UST opposed use of the Protocol where there was no intent to reorganize or liquidate as a going concern, as evidenced by the fact that Debtor was in the process of converting to Chapter 7. ResCap and Lehman jointly filed a similar objection and requested that the unearned retainer held by A+B be turned over to the Chapter 7 Trustee. At the time of the hearing, HLC had been converted to Chapter 7 and there was no longer a debtor-in-possession to support A+B's application. I declined to extend the Protocol to authorize professional retention following conversion of the case to Chapter 7, and entered an order denying A+B's employment

---

[2] 11 U.S.C. §§ 101 *et seq.* referred to herein as the "Bankruptcy Code" or by section number.

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

1 application without prejudice to A+B seeking employment pursuant to Bankruptcy Code

2 § 327. (Doc #101)  The order was not appealed and is law of the case.

3        HLC filed a second application to employ A+B for advisory services and Matthew

4 English as corporate officer. (Doc #123)  As admitted in the application, English was the sole

5 prepetition director of HLC and as such did not satisfy the disinterestedness requirement.  The

6 Trustee and UST raised informal objections, and A+B withdrew the application. (Doc #126)

7        At the suggestion of HLC's counsel, counsel for the key parties in this case entered

8 into a stipulation authorizing A+B to seek compensation as an administrative expense

9 pursuant to § 507(a)(2), provided that A+B file a fee application in accordance with § 330 and

10 have its compensation governed by the standards set forth in § 330. (Doc # 129)  This

11 stipulation was without prejudice to or waiver of the right of any party in interest to object to

12 any application.  An order approving the stipulation was entered (Doc # 131) and A+B then

13 filed an application for compensation consistent with § 330 (Doc # 147, 148).  Ten months

14 later, Trustee objected to A+B's request for an administrative claim for its work during the

15 period HLC was a debtor-in-possession.  Trustee asserts that there is no legal authority to

16 support A+B's request.

17        While recognizing that the stipulation did not include a waiver, A+B asserts that it

18 anticipated an objection to specific fees, not an objection to the entirety of the claim or A+B's

19 ability to obtain an administrative claim.  It argues that had it realized this could be Trustee's

20 position, it would have pursued its application.  But as A+B withdrew its application a month

21 before the stipulation was signed, the decision to withdraw the application was independently

22 made prior to entry into the stipulation.

23        A+B's application was set for hearing on November 19, 2020.

24

25 Analysis

26        Trustee's objection to A+B's application is straightforward.  There is no statutory

27 provision or case authority to allow A+B an administrative claim.  Neither A+B nor HLC's

28

3

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

1    Chapter 11 counsel provided any argument to the contrary.  Instead, A+B relies on the

2    inequities of the situation and encourages the use of judicial discretion to resolve the issue.

3           If A+B is not allowed an administrative claim, it will be the only professional not

4    compensated for its work during this case.  In her objection, Trustee acknowledges that A+B

5    performed work for HLC while it was a debtor-in-possession and assisted with an orderly

6    transition from Chapter 11 to 7.  Further, Trustee received compensation in this case that may

7    be the largest award issued pursuant § 326(a) in this District.  This is not a case where

8    reduction of professional compensation is a shared burden.

9           Yet A+B may only be allowed compensation in a manner that is consistent with the

10   Bankruptcy Code.  Section 507(a)(2) authorizes administrative expense status for claims

11   allowed pursuant to § 503(b).  There are two statutory grounds to be considered, plus judicial

12   discretion as advocated at the hearing.

13

14          (1) Section 503(b)(2)

15          Section 503(b)(2) provides an allowed, administrative expense for compensation and

16   reimbursement awarded under § 330(a) of the Code.  This provision ensures that professionals

17   retained by or on behalf of the estate have one of the highest priorities of distribution. The

18   trade-off for this administrative priority is that the professional must meet the requirements of

19   § 327, including that the professional "does not hold or represent an interest adverse to the

20   estate, and that are disinterested persons."  A+B recognizes that while it does not hold an

21   interest adverse to the estate, English was HLC's sole officer prior to the bankruptcy filing

22   and is not disinterested.

23          For this reason, A+B sought employment pursuant to the Protocol.  While predicated

24   on § 101 and § 363 rather than § 327(a), there is no statutory authority for the Protocol.

25   Instead, it arose out of a settlement agreement between the UST and Jay Alix & Associates in

26   matters involving a significant disgorgement of funds by Jay Alix.  The key contours are:

27                  (a) individuals associated with management consultancy firms or similar

28                      entities will be retained in only one capacity,

4

1              (b) the retention application must be filed under Bankruptcy Code § 363 and

2              disclose the firm's relationship with interested parties and provide other

3              disclosures otherwise indicating it is disinterested,

4              (c) monthly staffing reports must be filed and are subject to Court review; and

5              (d) retention of individuals provided by the firm must be approved by and act

6              under the direction of an independent board of directors.[3]

7 "[T]he Protocol was designed to prevent a party from using its position in one capacity to

8 benefit itself in another capacity." *In re Nine West Holdings, Inc.*, 588 B.R. 678, 688 (Bankr

9 S.D.N.Y. 2018).

10       The Protocol consists of a four-page outline and does not directly address how "crisis

11 management professionals" will be compensated. A+B's initial application contemplated

12 receiving immediate payment of its invoices from HLC's funds held as a retainer. This is

13 consistent with authorizing use of estate assets outside the ordinary course of business after

14 notice and hearing but does not allow for an administrative claim. Section 503(b) does not

15 include either §§ 105 or 363(b) as a statutory basis for an administrative claim.

16

17       (2) Section 503(b)(1)

18       Section 503(b)(1) authorizes an administrative claim for "the actual, necessary costs

19 and expenses of preserving the estate." The Ninth Circuit set forth the parameters of this

20 section in *In re Dant & Russell, Inc.*, 853 F. 2d 700 (9th Cir. 1988). Review and application

21 of the guidelines illustrates the hurdles that English and A+B must overcome:

22              (a) Section 503(b)(1) is to be narrowly construed to keep fees and administrative costs

23              at a minimum. *Id.* at 706.

24       The narrow construction of professional fees was further addressed by the BAP in *In*

25 *re Weibel*, 176 B.R. 209 (9th Cir. BAP 1994). There, the court found that § 503(b)(1) and

26 (b)(2) are remarkably similar, each providing an administrative claim for the "actual,

27 ───────────────────

28 [3] *See United States Trustee Program Policy and Practices Manual*, available at
https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual

1  necessary" services to or costs and expenses used to preserve the estate. *Id.* at 213. As such,

2  the court found it reasonable "to construe § 503(b)(2), with its specific reference to

3  compensation for professionals under Section 330, as the only part of Section 503(b) under

4  which professionals can receive compensation." *Id.*

5        (b) An actual, not potential benefit, must accrue to the estate, and courts should be

6           more concerned with maximizing the size of the estate for creditors. *Dant & Russell*,

7           853 F. 2d at 706.

8        Here, resolution of the issue determines whether A+B is authorized to apply its

9  retainer to its fees and expenses, or whether those funds are turned over to the Trustee for

10  distribution to creditors.

11        (c) Preservation of estate assets for the benefit of creditors. *Id.* at 706-07.

12        From the outset, HLC's primary asset was its claim against Lending Tree for recovery

13  of the dividend. The estate was not in significant danger of losing this asset, but rather trying

14  to determine the most efficient means of converting it from a potential recovery to funds

15  available for distribution to creditors. It appears that A+B's work during the Chapter 11

16  period was beneficial to HLC, and it may have laid the groundwork for the ultimate

17  resolution. But it was not directly successful in resolving the dispute and recovering funds for

18  creditors.

19        (d) Courts are not free to establish their own priorities of payment within the

20           Bankruptcy Code. *Id.* at 709.

21        Sections 507(a)(2) and 503 were enacted by Congress and encapsulate the universe of

22  administrative claims. "[W]hile there can be some administrative expenses that are not listed

23  in § 503(b), they must nonetheless fall within § 503(b)'s interstices." *In re Lehman Bros.*

24  *Holdings Inc.*, 508 B.R. 283, 289 (S.D.N.Y. 2014).

25        A+B's argument for application of § 503(b)(1) is precluded by case authority within

26  the Ninth Circuit holding that § 503(b)(1) does not provide an alternate means for

27  professionals that do not satisfy the requirements of § 327 to obtain an administrative claim.

28

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

1    *See Weibel*, 176 B.R. at 213.[4]  While there is authority for a retroactive award of fees for

2    services rendered by a professional without court approval, these cases still require the

3    professional to be disinterested.  A requirement English cannot meet.  *See In re Atkins*, 69 F.

4    3d 970, 976 (9th Cir 1995) ("exceptional circumstances" authorizing *nunc pro tunc*

5    employment for compensation requires professional to satisfy requirements for employment

6    in § 327);  *In re Mehdipour*, 202 B.R. 474, 479 (9th Cir. BAP 1996) (finding that

7    compensation under § 503(b)(1) requires the professional to be disinterested and not hold any

8    adverse interests).

9

10        (3) Judicial Discretion

11        Judicial discretion is then the avenue of last resort for A+B.  A court's discretion is not

12    subject to clearly defined boundaries but requires the use of cautious restraint in order to

13    avoid favoritism.  It is more readily applied in administrative and procedural matters than to

14    substantive questions.  And as the Supreme Court made clear in *Law v. Siegel*, 571 U.S. 415,

15    421 (2014), a bankruptcy court's exercise of its statutory and inherent power "may not

16    contravene specific statutory provisions."  Section 105(a) "confers authority to 'carryout' the

17    provisions of the Code, but it is quite impossible to do that by taking action that the Code

18    prohibits."  *Id.*  " '[W]hatever equitable powers remain in the bankruptcy courts must and can

19    only be exercised within the confines' of the Bankruptcy Code."  *Id.* at 422 (quoting *Norwest*

20    *Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).

21        Allowance of professional employment and compensation is addressed in five sections

22    of the Bankruptcy Code –  §§ 327, 328, 329, 330, and 331.  Allowance of an administrative

23    claim for professional compensation awarded under § 330(a) is provided in §503(b)(2).

24    Professional employment and compensation is well-framed by the Bankruptcy Code and

25    substantive in nature.  As such, my judicial discretion is limited where the professional does

26    not satisfy the statutory requirements for employment.  The Protocol addressed the issue of

27    _____

28    [4] The Second and Third Circuits agree.  *See In re Keren Ltd. Partnership,* 189 F. 3d 86 (2d Cir 1999); *In re F/S Airlease II, Inc.*, 844 F. 2d 99 (3d Cir. 1988).

7

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

1 | employment of professionals that do not satisfy § 327(a)'s requirements, but it is not so fully

2 | formed as to address the issue originally presented here: an intervening conversion to Chapter

3 | 7 resulting in denial of employment.  And as the Protocol is incapable of creating an

4 | administrative priority, it does not do so.

5 |   Accordingly, the Trustee's objection is sustained, and A+B's request for an

6 | administrative expense claim for fees and services provided to HLC during the period it was

7 | in Chapter 11 is denied.  A+B is required to turnover to the Trustee the remaining balance of

8 | its retainer as of the petition date.  A+B's request for an administrative claim of $331.95 for

9 | expenses incurred post-conversion is allowed.

10

11 | **END OF ORDER**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 19-51455    Doc# 287    Filed: 12/30/20    Entered: 12/30/20 11:53:21    Page 8 of
9

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

1

## COURT SERVICE LIST

2    All ECF Recipients

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9