

**Entered on Docket**
**December 30, 2020**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes the order of the Court.
Signed: December 30, 2020

*M. Elaine Hammond*
_____
**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re

Home Loan Center, Inc.

          Debtor.

Case No. 19-51455 MEH

Chapter 7

<u>Video Conference</u>
Date: November 19, 2020
Time: 11:00 a.m.

## FINAL ORDER ALLOWING FEES AND EXPENSES

Pachulski Stang Ziehl & Jones LLP ("PSZJ") represented the Chapter 11 debtor, Home Loan Center ("HLC"), at the filing of its case. HLC was a non-operating entity with scheduled assets of $11 million and scheduled liabilities of $111 million. HLC's largest asset was scheduled in an unknown amount—a litigation claim for recovery of $40 million in dividends paid to its parent corporation, Lending Tree, LLC ("Lending Tree") in January 2016.

On June 21, 2019, the United States District Court for District of Minnesota entered judgment for ResCap Liquidating Trust ("ResCap") against HLC in the amount of $68 million. Lacking assets to post a supersedeas bond, HLC filed its Chapter 11 case on July 21, 2019.[1] Shortly thereafter, HLC filed applications to employ professionals.

---

[1] Professionals were paid in full and provided significant retainers prior to the filing of the petition.

1

On the same day as these applications were filed, ResCap moved to convert the case to Chapter 7. This led to discovery and a stipulation to continue the hearing pending motions and applications. During this period, HLC and its professionals sought to negotiate a settlement with Lending Tree that would fund a liquidating plan providing recovery to HLC's creditors. HLC succeeded in obtaining a significant offer from Lending Tree, but due to concerns of an insider relationship and the lack of a term sheet, neither ResCap nor Lehman Brothers Holdings, Inc. ("Lehman"), the second largest unsecured creditor, supported the proposed settlement. Without a path forward in Chapter 11, HLC's counsel announced at the August 29 hearing that HLC would voluntarily convert its case to Chapter 7. The conversion order was entered on September 19, 2019, at which point Doris Kaelin was appointed Chapter 7 Trustee ("Trustee"). In total, HLC's Chapter 11 lasted 58 days.

For that period, PSZJ filed a final fee application seeking $548,127.50 in fees, $11,668.12 in expenses, plus $104,097.17 in fees and expenses of non-testifying experts. (Doc # 140) The United States Trustee objected to PSZJ's fees on four grounds asserting: (1) PSZJ failed to meet its burden to establish the services performed were beneficial to the bankruptcy estate, (2) billing for intra-office conferences and meetings was not adequately justified, (3) travel time billed at full hourly rate, and (4) PSZJ retained professionals as expert witnesses but did not seek to have their employment approved by the court. (Doc # 261) PSZJ subsequently filed a reply reducing the fees requested for travel time, thereby resolving that issue. (Doc # 270)

*PSZJ's services beneficial to the estate:*

HLC had not operated since 2012, as such it was never anticipated to reorganize in Chapter 11. However, a liquidating plan based on recovery from Lending Tree was a viable option. Filing the Chapter 11 case triggered the automatic stay and provided an opportunity to resolve ResCap's claim without all HLC's assets falling to its largest unsecured creditor. During the Chapter 11 period, PSZJ's work focused on two areas: responding to discovery related to the conversion motion and negotiation with Lending Tree. Once ResCap filed its

2

motion to convert and requested discovery, PSZJ was required to respond. At the same time, PSZJ sought to negotiate a settlement with Lending Tree that would allow for a liquidating plan.

Ultimately, the firm obtained an offer from Lending Tree for $31 million to resolve the dividend claim. While ResCap and Lehman did not support this resolution, PSZJ's ability to obtain a substantial offer during this period signaled to the creditors—and the Trustee—that settlement was likely and that the case would not require expensive litigation that the Chapter 7 estate may be unable to afford. Further, in presenting Lending Tree's offer to the creditors it became clear that due to the creditors' concerns about HLC's independence from Lending Tree, a plan proposed by HLC was unlikely to obtain approval. The court and parties were then promptly informed that HLC would voluntarily convert to Chapter 7.

As such, I find PSZJ's services were beneficial to HLC's bankruptcy estate.

*Intra-office Conferences*:

Review of PSZJ's time records supports the Trustee's argument that their standard practice is for each attorney to bill for time on intra-office conferences. PSZJ does not dispute this. Where multiple professionals are required to staff a case, this is necessary to ensure that each group is aware of developments and acting in coordination. However, it is also an invitation to overbill, particularly where 13 attorneys are working on a matter during a two-month period. In addition, 7 attorneys have billing rates of around $1,000. At these rates, all fees should be for substantive work and not administrative. The time records show that some administrative matters crept into the fee request. As a result, a reduction of $5,000 is applied to address both issues.

*Retention of Expert Witnesses*:

In connection with its representation of HLC, PSZJ retained two non-testifying experts: David Crichlow of Katten Muchin Rosenmann LLP ("Katten") and BPM, an accounting and consulting firm. Neither Katten nor BPM was employed pursuant to § 327.

3

The UST objects as this conflicts with the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees set forth by the Northern District of California Bankruptcy Court ("Guidelines"). Specifically, paragraph 26 states: "A professional employed under § 327 may not employ, and charge as an expense, another professional (e.g., special litigation counsel employing an expert witness) unless the employment of the second professional is approved by the Court prior to the rendering of services."

In response, PSZJ argues that Katten and BPM are non-testifying experts and that disclosure of the scope of their retention would have been prejudicial to HLC's claims against Lending Tree. As such, their retention without § 327 employment is consistent with the additional protections provided to non-testifying experts in discovery. *See* FRBP 7026, incorporating FRCP 26(b)(4)(C) and (D). At the hearing, PSZJ also cited *In re That's Entertainment Marketing Group, Inc.*, 168 B.R. 226 (N.D. Cal. 1994), in support of its position.

In *That's Entertainment,* the District Court held that an accountant employed by special counsel as an expert witness did not assume a central role in administration of the estate, and therefore was not a professional requiring employment within the meaning of § 327. *Id*. at 230. The current Guidelines were promulgated 20 years later. Guidelines are adopted by the judges of the Bankruptcy Court but are not local rules, and do not have the force and effect of such. *See* BLR 9029-1.

In most cases, it is a better rule to prohibit a professional employed under § 327 from employing a second professional, and charging an expense, unless the second professional is also employed by the court. This serves two purposes; it provides notice of the engagement of professionals and potential administrative claims and protects against denial of fees incurred by the second professional pursuant to § 330. The disclosure of expert witnesses usually does not raise concerns, especially, when it is anticipated that they will be deposed or testify at trial. Here, as the experts are non-testifying and their expertise is being used in evaluating litigation strategy, I will apply *That's Entertainment* and allow payment of their

fees as an expense of PSZJ. Allowance of this expense at the amount requested is based upon the Trustee's review of the fee statements and lack of opposition.

Accordingly, for the reasons provided herein, it is hereby ORDERED that PSZJ is granted final approval of fees in the amount of $535,107.50, expenses of $11,688.12, and is further authorized $104,097.17 as an expense for the expert fees of Katten and BPM.

**END OF ORDER**

**COURT SERVICE LIST**

All ECF Recipients